IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2025 Session

## STATE OF TENNESSEE v. KEITH HOPKINS

**Appeal from the Criminal Court for Shelby County**
No. C16009693    Carlyn L. Addison, Judge
_____

### No. W2024-01826-CCA-R3-CD
_____

Defendant, Keith Hopkins, was convicted of one count of aggravated assault, one count of theft of property valued at more than $1,000 but less than $10,000, and one count of domestic assault. The trial court sentenced Defendant to an effective four years' probation with the condition that if his probation was revoked, he could not later petition to have the remainder of his sentence suspended. The trial court later revoked Defendant's probation but nevertheless reprobated Defendant. After a subsequent revocation hearing, the trial court revoked Defendant's probation based on the original probation order, reasoning that Defendant was on probation when "he never should have been." Defendant appealed, arguing that the trial court abused its discretion by fully revoking his probation. After review, we reverse the judgment of the trial court, reinstate Defendant's probation, and remand the case for the trial court to determine the appropriate consequence of Defendant's violations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed, and Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JOHN W. CAMPELL, JR., J., joined.

Shantell S. Suttle, Cordova, Tennessee, for the appellant, Keith Desean Hopkins.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman (at oral argument), Senior Assistant Attorney General, and G. Kirby May (on brief), Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Denia Galloway, Regina Lucreziano, Atina Stravropoulos, and Monica Timmerman, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

Defendant pled guilty to one count of aggravated assault, one count of theft of property valued at more than $1,000 but less than $10,000, and one count of domestic assault. In January of 2018, the trial court imposed an effective sentence of four years' probation with the condition that if Defendant's probation was revoked, he could not later petition to suspend the remainder of his sentence. On October 11, 2021, Defendant's probation was revoked, but the trial court reprobated him for four more years. [1]

On March 1, 2022, Defendant's probation was transferred from Shelby County to Tipton County, Tennessee, and he reported to Probation Officer Joshua Ford on March 3, 2022. Officer Ford sanctioned Defendant on three separate occasions between March 21 and July 28, 2022, for a positive drug screen, for leaving the state without permission, and for failing to report. Officer Ford submitted a probation violation petition to the trial court alleging that Defendant violated his probation by failing to report, but the petition was never filed.

In October of 2023, Probation Officer Raya Moore took over Defendant's case, and she filed an amended probation violation petition on September 23, 2024. A Probation Violation Warrant was issued against Defendant, alleging that Defendant violated Rule 1 of his probation—that he "obey the laws of the United States or any State"—by being arrested for harassment in Shelby County. It further alleged that Defendant violated Rule 6—that he "allow [his p]robation [o]fficer to visit [his] home [and to] report to [his p]robation [o]fficer as instructed[.]" Specifically, the warrant stated that Officer Ford attempted to schedule appointments with Defendant on four separate occasions, but Defendant never attended any of the meetings because "he was out of town for work and on one occasion, . . . sick with COVID-19." The warrant also stated that Defendant was not present at his home when Officer Ford attempted to conduct a home visit.

The trial court held a revocation hearing on November 8, 2024. Prior to the State presenting evidence, Defendant moved to dismiss the indictment charging him with harassment. Defense counsel explained, "[the State] assured [Defendant] and counsel that it would be dismissed [because Defendant] was erroneously indict[ed]." The State agreed that it intended to dismiss the harassment charge listed in the Probation Violation Warrant, but it presented to the trial court a new indictment in which Defendant was charged with

---

[1] The appellate record does not include Defendant's indictment, the judgment forms reflecting Defendant's convictions, the original probation violation petition and warrant, the October 2021 order revoking Defendant's original probation, or the October 2021 order reprobating Defendant. However, we can glean their contents from other sources in the record.

another crime against a separate victim.[2]  The trial court stated that the issue concerning the original harassment charge was "moot because the State has indicated that [it's] gonna nol-pros [the charge.]"  The trial court also refused to consider the new indictment because it was "not included in the four corners of the text of the petition to revoke suspended sentence" but noted that "there [were] other issues [that it] needed to address at [the] hearing[—]the failure to report, basic absconsion, and his failure to allow officers to conduct a home visit, all of which are in violation of rules one and six of his probation."

Officer Moore testified at the hearing that Officer Ford spoke with Defendant on the telephone on July 27, 2022, "to ensure that [Defendant] would be at his scheduled appointment" on July 28, 2022.  Defendant informed Officer Ford that he was in South Carolina and that "his truck had broken down."  Officer Ford called Defendant again on July 28, 2022, and Defendant confirmed that he was still in South Carolina and would not be attending the appointment.  Officer Moore explained that she reviewed Defendant's record and discovered that he had been allowed to travel for work as a condition of his probation if he provided the trial court with documentation verifying his employment.  However, Defendant never provided such documentation.  Officer Moore admitted that she was aware that Officer Ford would contact Defendant via Facetime, Zoom, or other audiovisual application to determine whether Defendant "was in fact on the road and driving[.]"  However, Probation Officer Moore explained, "Facetime was not the documentation that [Defendant needed].  He [needed] something in writing and stuff to prove and to show that he was out there working[.]"  Officer Moore also noted that Officer Ford attempted to perform a home visit on Defendant's home on August 13, 2023, but he was unsuccessful because Defendant was not home.

Officer Moore tried to contact Defendant "several times" after she took over Defendant's case.  She sent a letter to Defendant's home, providing her contact information and instructing Defendant to report for a drug screen.  Defendant did not report.  Officer Moore also tried to call Defendant, but he did not answer.  She explained that each of her attempts to contact Defendant were unsuccessful and that she had not been in contact with Defendant since overtaking his case.

After Officer Moore's testimony, the trial court called a bench conference.  The trial court explained that Defendant was on probation in this case after being reprobated on October 11, 2021.  As a condition of Defendant's original probation, the trial court disallowed Defendant from petitioning to suspend the remainder of his sentence if his

---

[2] Neither the original indictment charging Defendant with harassment nor the subsequent indictment presented by the State at the revocation hearing are in the record.  The crime of which Defendant was charged in the subsequent indictment is unclear.

original probation was revoked. The trial court concluded that Defendant should not have been reprobated, explaining

> I wasn't the judge [that entered the original probation order] but I'm looking at this[,] and the Court speaks through its orders, and I have to follow court orders, no? And I don't know if it was an oversight on—I don't think any of us were involved. And I don't think there is any collusion. I just don't think that he was supposed to go on probation this second time around. Not that he did anything, not that he complied with the probation, but he was never—that wasn't supposed to happen.
>
> . . . .
>
> [I]f he's on probation in error, he's never technically on probation. He never should have gone on probation the second time. I didn't do it. So he should just do his time. He should just do his time, the time that he originally agreed to.

Based upon this previous order, the trial court fully revoked Defendant's probation and ordered him to serve his original four-year sentence incarcerated without granting the State or Defendant the opportunity to present further evidence. Defendant appealed.

*Analysis*

Defendant argues that the trial court abused its discretion by revoking his probation because the trial court erroneously relied on the January 2018 order denying him the ability to petition for the suspension of the remainder of his sentence upon revocation of his original probation. The State argues that the trial court did not abuse its discretion or, in the alternative, that this Court can find that Defendant violated his probation and order full revocation upon a de novo review. We agree with Defendant.

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). The first step is to determine whether the defendant has violated a condition of probation, and the second step is to determine the appropriate consequence of that violation. *Id.* We review both determinations for abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record." *Id.* at 759. Generally, discretion is abused when the trial court applies "incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Id.* at 758 (quoting *State v.*

*Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)). Where the trial court failed to make sufficient findings or provide its reasoning for its decision under either step, appellate courts may conduct a de novo review if the record is sufficiently developed, or it may remand the case for the trial court to make the necessary findings. *Id.* at 759 (citing *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)).

A trial court may find that a defendant has violated the conditions of his or her probation if such violation is established by a preponderance of the evidence. T.C.A. § 40-35-311(d)(1). Where the underlying offense is a felony, the trial court should also determine whether the defendant's violation constitutes a technical or non-technical violation because Tennessee Code Annotated section 40-35-311 provides differing penalties for both. A technical violation is a violation that "does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." *Id.* § -311(g). Non-technical violations are defined inversely. *See id.* § -311(e)(2). In order to establish that the trial court abused its discretion in determining whether he or she violated his or her probation, the defendant must show that "the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991).

Regarding the consequence determination, the trial court is tasked with "examin[ing] whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (citations omitted). Relevant considerations include but are not limited to "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5. In cases where the underlying offense is a felony, the trial court may not revoke or suspend a defendant's probation to any extent "based upon one (1) instance of technical violation or violations." T.C.A. § 40-35-311(d)(2). Furthermore, a trial court may not fully revoke a defendant's probation until the defendant is subject to his or her "fourth or subsequent revocation[.]" *Id.* § -311(e)(1)(A).

As to the first step of *Dagnan*, the trial court failed to find that Defendant violated his probation. The State insists that the trial court found that Defendant violated his probation by absconding, failing to report, and failing to allow Officer Ford to conduct a home visit. In support of this contention, the State points to the trial court's opening remark that it considered Defendant's "failure to report, basic absconsion, and his failure to allow officers to conduct a home visit, all of which are in violation of rules one and six of his probation." However, from our review of the bamboozling revocation hearing, the trial

- 5 -

court's revocation was based solely on its determination that Defendant should never have been reprobated, as evidenced by its remarks that Defendant "never should have gone on probation a second time" and that "he should just do [] the time that he originally agreed to." Consequently, the trial court abused its discretion under the first step of *Dagnan* by failing to find that Defendant violated a condition of his probation. *See Dagnan*, 641 S.W.3d 759. Similarly, we find that the trial court abused its discretion under the second step of *Dagnan* by revoking Defendant's probation without first finding that he had violated a condition of his probation. *See id.*

Finally, we conclude that the record is insufficient for us to conduct a de novo review under either step of *Dagnan*. *See id.* Because the trial court cut the revocation hearing midway through the State's evidence, Defendant was not granted an opportunity to rebut the State's assertion that he had violated his probation nor present evidence in mitigation regarding the seriousness of his alleged violations, his prior criminal history, or his character. *See id.* Therefore, we reverse the judgment of the trial court, reinstate Defendant's probation, and remand for a new revocation hearing.

## CONCLUSION

Based on the foregoing, we reverse the judgment of the trial court, reinstate Defendant's probation, and remand for a new revocation hearing.


_S/Timothy L. Easter_____
TIMOTHY L. EASTER, JUDGE

- 6 -